## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

**JOSHUA B.,**

     **Plaintiff,**

**vs.**                                    **CIVIL ACTION NO. 5:22-CV-00216**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER**
**OF SOCIAL SECURITY,**

     **Defendant.**

### <u>PROPOSED FINDINGS AND RECOMMENDATION</u>

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Order entered May 5, 2022 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Complaint and Motion for Remand and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 12, 13)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for remand (ECF No. 12), **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 13); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court for the reasons stated *infra*.

1

**Procedural History**

The Plaintiff protectively filed his application for SSI on September 16, 2019 alleging that his disability began on that date due to schizophrenia, bipolar disorder, high blood pressure, and because he "stay[s] mad a lot." (Tr. at 13, 204-209, 300) His claim was initially denied on February 20, 2020 (Tr. at 13, 95-105) and again upon reconsideration on May 4, 2020 (Tr. at 13, 107-113). Thereafter, the Plaintiff filed a written request for hearing on June 12, 2020. (Tr. at 114)

An administrative hearing was held on June 7, 2021 before the Honorable David S. Lewandowski, Administrative Law Judge ("ALJ"). (Tr. at 33-48) On June 25 2021, the ALJ entered an unfavorable decision. (Tr. at 10-32) On August 23, 2021, the Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 201-203) The ALJ's decision became the final decision of the Commissioner on March 3, 2022 when the Appeals Council denied the Plaintiff's Request. (Tr. at 1-6)

On May 4, 2022, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant, (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 7, 8) Subsequently, the Plaintiff filed a Brief in Support of Complaint and Motion for Remand (ECF No. 12); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 13), to which the Plaintiff filed his Reply Brief (ECF No. 14). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 41 years old as of the alleged onset date and considered a "younger person" throughout the underlying proceedings. See 20 C.F.R. § 416.963(c). (Tr. at 26) He

2

completed the eleventh grade and then went on to obtain his GED; he last worked as a nurse aide/attendant taking care of elderly people. (Tr. at 37, 46, 301)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age,

education and prior work experience. Id. § 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 416.920a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.
>
> (4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following

4

five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 416.920a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that the Plaintiff satisfied the first inquiry

because he had not engaged in substantial gainful activity since the application date of September 16, 2019. (Tr. at 15, Finding No. 1) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairment: bipolar disorder. (Id., Finding No. 2) At the third inquiry, the ALJ concluded the Plaintiff's impairment did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 16, Finding No. 3) The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels and that "[h]e is able to understand, remember, and apply simple instructions and perform simple tasks. He can have occasional interaction with others. He would be off task 10% of the workday." (Tr. at 20, Finding No. 4) At step four, the ALJ found the Plaintiff was unable to perform any past relevant work. (Tr. at 25, Finding No. 5) At the fifth step, the ALJ determined that in addition to the immateriality of the transferability of job skills, the Plaintiff's age, education, work experience, and RFC indicated that there are jobs that exist in significant numbers in the national economy that he can perform, such as a hand packer, farm worker, and janitor. (Tr. at 26, Finding Nos. 6-9) Finally, the ALJ determined the Plaintiff had not been under a disability since September 16, 2019. (Tr. at 27, Finding No. 10)

**Plaintiff's Challenges to the Commissioner's Decision**

The Plaintiff alleges the ALJ failed to reconcile the conflict between the controlling RFC which limits him to "simple instructions and simple tasks" and the SVP reasoning level of 2 required in each of the three jobs identified by the vocational expert – this reasoning level requires the individual must be able to "apply common sense understanding and to carry out detailed, but uninvolved written or oral instructions [and to deal with the problems involving few concrete variables in and from standardized situations]." (ECF No. 12 at 3) The Plaintiff points out that the

Fourth Circuit determined that there is an apparent conflict between an RFC limiting a claimant to one- to two-step instructions and an SVP reasoning level of 2. See <u>Henderson v. Colvin</u>, 643 Fed. App'x 273 (4th Cir. 2016). (<u>Id</u>.) He asserts that his limited reading and comprehension levels exacerbate this conflict. (<u>Id</u>. at 3-4) Since the ALJ did not explain or resolve this conflict, the Plaintiff asks this Court to remand this matter. (<u>Id</u>. at 5)

In response, the Commissioner contends there is no conflict, let alone any apparent conflict between the RFC and the jobs identified by the vocational expert or in the DOT[1] job descriptions for the ALJ to reconcile; moreover, the vocational expert testified his opinion was consistent with the DOT (ECF No. 13 at 7-9). Further, the Plaintiff neither raised nor identified any conflicts during the hearing, and the ALJ permissibly relied on the vocational expert's testimony (<u>Id</u>. at 8, 10). The Plaintiff has never claimed to be intellectually disabled, and despite his academic shortcomings, he did earn a GED and even some college credits in general studies. (<u>Id</u>. at 10) The Commissioner asserts that the final decision is supported by substantial evidence and asks this Court to affirm. (<u>Id</u>. at 11)

In his reply brief, the Plaintiff reasserts that the ALJ did not consider the conflict between "simple, repetitive tasks" and reasoning level 2, therefore, this case must be remanded. (ECF No. 14)[2]

---

[1] **D**ictionary of **O**ccupational **T**itles

[2] The Plaintiff cited three cases that supposedly concern "the conflict between 'simple, repetitive tasks' and reasoning level 2" warranting remand: <u>Boone v. Colvin</u>, 2016 WL 4447820, at *4 (W.D. Va. Aug. 3, 2016); <u>Ramey v. Colvin</u>, 2016 WL 4529787 (W.D. Va. Aug. 3, 2016); and <u>Guyton v. Berryhill</u>, 2019 WL 3308307, at *13 (D.S.C. May 30, 2019). (ECF No. 14 at 2) From the undersigned's review, however, only the <u>Guyton</u> case concerned such a conflict, as the others concerned a standing and walking limitation conflicting with light work (<u>Boone</u>) and a handling and fingering limitation conflicting with two of the jobs identified by the vocational expert (<u>Ramey</u>) – to that extent, these other two cases are distinguishable from the specific issue on appeal in the case *sub judice*.

**The Relevant Evidence of Record**[3]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

**The Administrative Hearing:**

Plaintiff Testimony:

The Plaintiff testified he receives mental health treatment for auditory hallucinations – he hears voices everyday – for which he takes medication that puts him to sleep (Tr. at 39-40). He said that hearing voices impairs his ability to concentrate, and cannot get housework done, but then he will "get manic" and finish all housework in one day (Tr. at 41). He testified that his medications help stabilizing his mood, that sometimes his anti-psychotic helps and other times it does not (Tr. at 42). He denied having any adverse effects from his medications (Tr. at 43).

Vocational Expert Testimony:

The vocational expert testified that a hypothetical individual with the Plaintiff's age, education, vocational profile and the controlling RFC as determined by the ALJ, *supra*, could not perform his past relevant work (Tr. at 46). The vocational expert testified that there were other jobs the individual could perform, including hand packer, farm worker, and janitor (Tr. at 46-47). The vocational expert testified that his testimony was consistent with the DOT, and while the DOT "does not describe work as simple and routine", he "interpret[ed] that as SVP: 1 and 2." (Tr. at 47)

---

[3] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. Since the appeal only concerns the final step in the sequential evaluation process, the undersigned does not summarize the medical evidence of record as there also appears to be no dispute concerning same.

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

DOT Consistency at the Fifth Step of Sequential Evaluation Process:

As stated *supra*, at the final step in the sequential evaluation process, the ALJ determined that the Plaintiff could perform medium work with additional limitations, with representative jobs including hand packer, farm worker, and janitor, according to the vocational expert's testimony. (Tr. at 26) The ALJ then determined that pursuant to Social Security Ruling ("SSR") 00-4p, the

vocational expert's testimony was consistent with the information contained in the DOT, and noted

that the vocational expert testified that the DOT "does not specifically address some limitations in

the undersigned's hypothetical questions regarding simple work or off-task rates", but "[t]he

vocational expert's testimony regarding such limitations does not conflict with or contradict the

DOT. It simply relies upon the vocational expert's education and expertise to explain areas not

specified by the DOT." (Tr. at 27)

> The Fourth Circuit has held "Although we could guess what these occupations
> require in reality, it is the purview of the ALJ to elicit an explanation from the
> expert ..." Pearson v. Colvin, 810 F.3d 204, 211 (4th Cir. 2015). The duty rests with
> the ALJ, not a reviewing court, to find facts and resolve conflicts. Radford, 734
> F.3d at 296; see also Brown v. Colvin, 639 Fed. App'x. 921, 923, 2016 WL 50298,
> at *2 (4th Cir. Feb. 9, 2016) ("We remand to avoid engaging in fact-finding 'in the
> first instance' and to allow the ALJ to further develop the record so that we can
> conduct a meaningful judicial review"). And, as the Fourth Circuit has repeatedly
> made clear, the ALJ must provide a sufficient explanation of his findings to allow
> for meaningful appellate review. See Mascio, 780 F.3d at 637 ("Because we are left
> to guess about how the ALJ arrived at his conclusion on [Plaintiff's] ability to
> perform relevant functions and indeed, remain uncertain as to what the ALJ
> intended, remand is necessary."); Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir.
> 1986) (holding that without an adequate explanation, "it is simply impossible to tell
> whether there was substantial evidence to support the determination").

See Cunningham v. Berryhill, No. 3:16-cv-02525, 2017 WL 1259587 (S.D.W. Va. Mar. 31, 2017)

(Tinsley, M.J.). The pertinent law is clear that where there is an apparent conflict between a

vocational expert's testimony and the DOT, the adjudicator has an affirmative responsibility to ask

about the conflict between the testimony and the information provided in the DOT. Policy

Interpretation Ruling: Titles II And XVI: Use Of Vocational Expert And Vocational Specialist

Evidence, And Other Reliable Occupational Information In Disability Decisions, SSR 00-4p, 2000

WL 1898704, at *4; see also Keller v. Berryhill, 754 Fed. App'x. 193, 199 (4th Cir. 2018).

There is no question that it remains the exclusive duty of the ALJ to identify any apparent

conflicts in the evidence and to resolve them. At the fifth step of the sequential evaluation process, the burden of proof shifts to the ALJ because "[i]n order to support a finding that you are not disabled at this fifth step . . . we are responsible for providing evidence that demonstrates that other work exists . . . that you can do, given your residual functional capacity and vocational factors." See 20 C.F.R. § 416.960(c)(2). In determining the existence of jobs that a claimant can perform, the ALJ will consider both the DOT and a vocational expert's testimony. Id. § 416.966. Indeed, SSR 00-4p expressly allows the ALJ to rely upon a vocational expert's "experience in job placement or career counseling" among reasonable bases for relying on the evidence from the vocational experts rather than the DOT. See SSR 00-4p, 2000 WL 1898704, at *2.

Both parties acknowledge that the three jobs identified by the vocational expert in response to the ALJ's hypothetical each provide for a reasoning level of 2. The undersigned notes that the DOT provides the following description for the hand packer job:

> Packages materials and products manually, performing any combination of following duties: Cleans packaging containers. Lines and pads crates and assembles cartons. Obtains and sorts product. Wraps protective material around product. Starts, stops, and regulates speed of conveyor. Inserts or pours product into containers or fills containers from spout or chute. Weighs containers and adjusts quantity. Nails, glues, or closes and seals containers. Labels containers, container tags, or products. Sorts bundles or filled containers. Packs special arrangements or selections of product. Inspects materials, products, and containers at each step of packaging process. Records information, such as weight, time, and date packaged. May stack, separate, count, pack, wrap, and weigh bakery products and be designated Bakery Worker (bakery products). May apply preservative to aircraft and spaceship parts, package parts for shipment, and be designated Wrapper and Preserver (aircraft mfg.). May be designated according to whether high-production or small-lot packaging as Fancy Packer (retail trade; wholesale tr.); Packaging-Line Attendant (any industry); specific packaging duty performed as filling, wrapping, packing, labeling, and container cleaning as Sack Sewer, Hand (any industry); kinds of equipment used or product packaged as Candle Wrapper (fabrication, nec); Carton Stapler (any industry); or whether packager performs associated duties as final assembly before packaging product as Novelty-Balloon Assembler And

Packer (rubber goods). May weigh and package meat in retail store and be designated Meat Wrapper (retail trade). May be designated: Bagger (any industry); Bow Maker, Gift Wrapping (any industry); Box Maker, Cardboard (any industry); Box Wrapper (any industry); Bundler (any industry); Candy Packer (sugar & conf.); Caser, Rolled Glass (glass mfg.); Coil Strapper (steel & rel.); Container Filler (any industry); Filler (any industry); Furniture Packer (retail trade); Grader, Sausage And Wiener (meat products); Guncotton Packer (chemical); Inserter, Promotional Item (any industry); Inspector-Packager (any industry); Lidder (any industry); Mattress Packer (furniture); Packager, Meat (meat products); Packer, Dried Beef (meat products); Packer, Foamed-In-Place (any industry); Packer, Sausage And Wiener (meat products); Piece-Goods Packer (textile); Scaler, Sliced Bacon (meat products); Sponge Packer (wholesale tr.); Stamper (any industry); Table Worker (any industry); Tube Packer (rubber tire); Wrapper (any industry); Wrapper, Hand (can. & preserv.); Wrapping Remover (any industry). Workers who tend packaging machines are classified under PACKAGER, MACHINE (any industry) 920.685-078.

See, DICOT 920.587-018 (G.P.O.), 1991 WL 687916.

Next, the DOT provides the following description for the farm worker job:

Performs any combination of following duties on poultry farm: Catches chickens and places them in crates and poultry houses. Sprays disinfectants or vaccines on chickens or in poultry houses. Spreads wood shavings over floor, using shovel. Cleans droppings and waste from floor, using broom and shovel, backhoe, or manure-cleaning machine. Dumps sacks of feed on conveyors and in feeders in brood houses. Fills water containers. Repairs farm buildings, fences, and shipping crates, using handtools. Lengthens and shortens ropes to adjust level of feed cans and water troughs. Moves equipment, using wheelbarrow, truck, and cart; or carries equipment from one area to another. Shovels manure onto truck. May stack and move crated eggs and poultry. May drive truck to move and deliver materials. May be designated according to type of farm or product as Laborer, Brooder Farm (agriculture); Laborer, Chicken Farm (agriculture); Laborer, Egg-Producing Farm (agriculture); Laborer, Fryer Farm (agriculture); Laborer, Pullet Farm (agriculture); Laborer, Turkey Farm (agriculture).

See, DICOT 411.687-018 (G.P.O.), 1991 WL 673428.

Finally, the DOT provides the following description for the janitor job:

Keeps working areas in production departments of industrial establishment in clean and orderly condition, performing any combination of following duties: Transports raw materials and semifinished products or supplies between departments or

buildings to supply machine tenders or operators with materials for processing, using handtruck. Arranges boxes, material, and handtrucks or other industrial equipment in neat and orderly manner. Cleans lint, dust, oil, and grease from machines, overhead pipes, and conveyors, using brushes, airhoses, or steam cleaner. Cleans screens and filters. Scrubs processing tanks and vats. Cleans floors, using water hose, and applies floor drier. Picks up reusable scrap for salvage and stores in containers. Performs other duties as described under CLEANER (any industry) I Master Title. May burn waste and clean incinerator. May pick up refuse from plant grounds and maintain area by cutting grass or shoveling snow. May operate industrial truck to transport materials within plant. May start pumps to force cleaning solution through production machinery, piping, or vats. May start pumps to lubricate machines. May be designated according to area cleaned as Alley Cleaner (textile); Can-Filling-Room Sweeper (beverage); Casting-And-Locker-Room Servicer (plastic-synth.); Ceiling Cleaner (any industry); Engine-Room Cleaner (any industry); Floor Cleaner (any industry); Overhead Cleaner (any industry).

See, DICOT 381.687-018 (G.P.O.), 1991 WL 673258.

From those descriptions, these jobs do not present an actual or "apparent" conflict with the controlling RFC. See, e.g., Critchley v. Colvin, No. 5:15–CV–08288, 2016 WL 3030211, at *8 (S.D.W. Va. May 4, 2016), *recommendation adopted by*, 2016 WL 3033763 (S.D.W. Va. May 26, 2016) (finding ALJ's failure to question vocational expert about potential conflicts harmless where "no conflict, actual or apparent," existed). Indeed, while the Fourth Circuit has not made a precedential ruling on whether "simple instructions and simple tasks" conflicts with a reasoning level of 2, as noted by the parties, numerous courts within this Circuit have found no conflict[4] while others have.[5] Of further interest here is that most circuit courts that have addressed this

_____

[4] See, e.g., Spurlock v. Berryhill, 2018 WL 791302, at *6 (M.D.N.C. Feb. 8, 2018) (collecting cases and explaining that "the majority of post-*Henderson* district court cases within the Fourth Circuit . . . have found no such conflict between [Reasoning Level 2] and [simple, routine, repetitive tasks]"), *report and recommendation adopted by*, 2018 WL 4931610, at *1 (M.D.N.C. Mar. 21, 2018); Fairall v. Colvin, 2016 WL 6833423, at *4 (N.D.W. Va. Aug. 18, 2016) (distinguishing *Henderson* and finding that the ALJ reasonably relied on the vocational expert's testimony).

[5] See, e.g., Bruster v. Saul, 2019 WL 4454527, at *12 (D.S.C. Aug. 30, 2019); Guyton v. Berryhill, 2019 WL 3308307, at *13 (D.S.C. May 30, 2019) (remand warranted where the ALJ clearly limited the plaintiff to jobs with occasional

precise issue have found no apparent conflict between a reasoning level of 2 and simple, routine, or repetitive work. See, e.g., <u>Rounds v. Comm'r Soc. Sec. Admin.</u>, 807 F.3d 996, 1004 n.6 (9th Cir. 2015) ("Unpublished decisions of panels of this Court and opinions from some of our sister circuits have concluded that an RFC limitation to 'simple' or 'repetitive' tasks is consistent with Level Two reasoning.") (citing <u>Moore v. Astrue</u>, 623 F.3d 599, 604 (8th Cir. 2010); <u>Abrew v. Astrue</u>, 303 Fed. App'x 567, 569 (9th Cir. 2008); <u>Lara v. Astrue</u>, 305 Fed. App'x 324, 326 (9th Cir. 2008); <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1176 (10th Cir. 2005); <u>Money v. Barnhart</u>, 91 Fed. App'x 210, 215 (3d Cir. 2004)); <u>see also</u> <u>Monateri v. Comm'r</u>, 436 Fed. App'x 434, 446 (6th Cir. 2011); *cf.* <u>Terry v. Astrue</u>, 580 F.3d 471, 478 (7th Cir. 2009) (finding no conflict between jobs classified at GED reasoning level 3 and a limitation to "simple, unskilled work").

The undersigned finds the Plaintiff's reliance on <u>Henderson</u> unavailing – in that case, the Fourth Circuit noted the presiding ALJ failed to reconcile or explain the *apparent* conflict between the RFC limitation to one- and two-step instructions and the reasoning level of 2 required in the jobs identified by the vocational expert. [6]  In any event, notwithstanding the split within this Circuit, the Plaintiff has failed to demonstrate that there is an *apparent unresolved conflict* between the vocational expert's testimony regarding the limitation to simple instructions and simple tasks

---

or no variables, which was more in line as a GED level 1, but did not consider or explain the apparent conflict between the vocational expert testimony identifying jobs requiring a GED level 2); <u>Taylor v. Berryhill</u>, 2019 WL 1397187, at *2–3 (D.S.C. Mar. 28, 2019) ("If a limitation to simple, routine, repetitive tasks is akin to short, simple instructions, it appears there is an apparent conflict unresolved by the ALJ.").

[6] As noted *supra*, a level of 2 reasoning requires an individual to "apply common sense understanding and to carry out <u>detailed</u>, but uninvolved written or oral instructions [and to deal with the problems involving few concrete variables in and from standardized situations]." In <u>Henderson</u>, the Fourth Circuit observed that the ALJ's controlling RFC providing only one- or two-step instructions was more akin to a reasoning level of 1, "which requires the ability to '[a]pply commonsense understanding to carry out simple one- or two-step instructions[.]' " <u>Henderson</u>, 643 Fed. App'x at 277 (citing <u>Rounds v. Comm'r</u>, 807 F.3d 996, 1003 (9th Cir. 2015) (holding that reasoning code 2 requires additional reasoning and understanding above the ability to complete one-to-two step tasks)).

and the DOT's indication that the hand packer, farm worker and janitor positions have a reasoning level of two. In this case, the ALJ's finding that there were no conflicts, especially because the vocational expert testified that even though the DOT "does not describe work as simple and routine", the expert "interpret[ed] that as SVP: 1 *and 2*." (Tr. at 47) (*italics* supplied) On that note, the Plaintiff has failed to show that any additional explanation from the vocational expert would be required with regard to the jobs identified during his testimony.

To the extent the Plaintiff contends that the vocational expert's reduction of the number of jobs due to some ostensible, yet unidentified or unspecified, conflict between his testimony and the DOT, it is noted that the cases within this Circuit are sparse on that particular issue. However, another court determined that an ALJ properly inquired as to whether there were any conflicts between a vocational expert's testimony and the DOT where there was no apparent conflict, thus, the ALJ was not obligated to independently investigate further. See Acevedo ex rel. Acevedo v. Colvin, 2014 WL 197738, at *5 (D.S.C. 2014) (District Court declined to adopt Magistrate Judge's recommendation for remand when ALJ relied upon vocational expert testimony reducing number of jobs by 50% and then an additional 30% based on controlling RFC where vocational expert affirmed her testimony was consistent with DOT, SCO[7] and Department of Labor publications)[8]; see also, Newman v. Saul, 474 F.Supp.3d 345, 365 (D. Mass. 2020) (vocational expert's invocation of her experience was sufficient reasonable explanation for reduction from DOT job numbers,

_____

[7] **S**elected **C**haracteristics of **O**ccupations Defined in the Revised Dictionary of Occupational Titles.

[8] This case is also similar to the matter at bar to the extent that the plaintiff's attorney did not object to the vocational expert's testimony or identify any discrepancies between his testimony and the DOT and SCO.

permitting hearing officer to rely on her testimony in making RFC finding).[9]

Accordingly, the undersigned **FINDS** that the ALJ met his burden of proof at the fifth step of the sequential evaluation. The undersigned further **FINDS** the ALJ's unfavorable decision is supported by substantial evidence.

<u>**Recommendations for Disposition**</u>

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for remand (ECF No. 12), **GRANT** the Defendant's request to affirm the decision (ECF No. 13), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is

---

[9] Notably, the District Court of Massachusetts deemed its holding compliant with the Supreme Court's determination in <u>Biestek v. Berryhill</u>, 139 S.Ct. 1148, 1155 (2019) that a hearing officer could rely upon the testimony of a vocational expert even though she refused to supply underlying data to support her conclusion, as the testimony itself constituted "substantial evidence." <u>Id.</u>; see e.g., <u>Ford v. Saul</u>, 950 F.3d 1141, 1160 (9th Cir. 2020) (quoting <u>Buck v. Berryhill</u>, 869 F.3d 1040, 1051 (9th Cir. 2017) ("[I]n the absence of any contrary evidence, a [vocational expert's] testimony is one type of job information that is regarded as inherently reliable, thus, there is no need for an ALJ to assess its reliability."); <u>Welsh v. Colvin</u>, 765 F.3d 926, 930 (8th Cir. 2014) (citing <u>Jones v. Astrue</u>, 619 F.3d 963 (8th Cir. 2010) (vocational expert reduced estimate of the number of jobs based on handling restrictions in RFC otherwise not provided for in DOT for those jobs determined to be a reasonable basis for ALJ's conclusions).

made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: December 8, 2022.



Omar J. Aboulhosn
United States Magistrate Judge